UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LIEM DUY NGUYEN,<br><br>Defendant. | Case No: 22-CR-168 (1) (PJS/TNL)<br><br>**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING** |

The Defendant LIEM DUY NGUYEN, by and through his attorney, FREDERICK J. GOETZ, and pursuant to U.S.S.G. §6A1.2 and Local Rule 83.10, respectfully submits the following position regarding sentencing factors in his case.

## I. INTRODUCTION

Liem Duy Nguyen is a first-time offender who pleaded guilty to one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in Case No. 22-CR-168 and one count of importation of a controlled substance under 21 U.S.C. §§ 952(a) and 960 in Case No.: 23-CR-03. Both cases will come before the Court for sentencing on October 13, 2023.

The Presentence Investigation Report ("PSR") (Dkt. 85) recommends that the Court find the total offense level under the United States Sentencing Guidelines

("Guidelines") is 31, that defendant is in criminal history category I, and that the resulting advisory Guidelines' range is 108 months to 135 months imprisonment. (Dkt. 85 at ¶ 75). The PSR includes in the offense level calculations a 2-level increase for importation of methamphetamine under U.S.S.G. §2D1.1(b)(5). Defendant objects to application of this enhancement as it twice punishes Mr. Nguyen for conduct that is an element of the importation offense to which he pleaded guilty in Case No. 23-CR-003 under 21 U.S.C. § 952(a). Application of the enhancement under §2D1.1(b)(5) would also be contrary to the parties' plea agreement which provides that no specific offense characteristics apply other than the "safety valve" reduction under U.S.S.G. §5C1.2. (See Dkt. 72 at ¶ 11.b and j.). Defendant asks that the Court find that, under the present version of the Guidelines, the total offense level is 29, that Mr. Nguyen is in criminal history category I, and that the advisory Guidelines' imprisonment range is 87 months to 108 months.

Defendant also asks that the Court vary downward from the applicable Guidelines and sentence him to a term of imprisonment of 40 months. First, proposed amendments to the Guidelines §4C1.1 effective November 2023 would reduce Mr. Nguyen's total offense level by 2-levels as he has zero criminal history points. Second, considering the factors of 18 U.S.C. § 3553(a), a total sentence of 40 months imprisonment is sufficient but not greater than necessary to accomplish the goals of sentencing.

## II. SPECIFIC OBJECTIONS TO PRESENTENCE REPORT

1. ¶ 24. Defendant objects to the application of the two-level enhancement under U.S.S.G. § 2D1.1(b)(5) based on his importation of methamphetamine. Applying this enhancement in the circumstances of this case constitutes impermissible double counting. Application of this provision of the Guidelines takes into account conduct that has already been fully accounted for by application of another provision of the Guidelines, the base offense level under §2D1.1, and an element of one of the offenses of conviction, importation of a controlled substance under 21 U.S.C. § 952(a).

2. ¶ 29. Based upon the objection to paragraph 24, defendant would amend this paragraph to reflect a total offense level of 29.

3. ¶ 75. Defendant would amend this paragraph to state that based upon a total offense level of 29 and a criminal history category of I, the advisory guideline imprisonment range is 87 months to 108 months.

4. ¶ 95. Defendant would amend this paragraph to reflect a total offense level of 27 and a criminal history category of I results in an advisory guidelines' range is 70 to 87 months' imprisonment.

## III. ARGUMENT

*A. Sentencing Considerations Generally*

In *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), the United States Supreme Court clarified the two-step process to be followed in federal sentencing. The first step is to determine the proper Guidelines' range for the defendant's sentence. *Gall,* 552 U.S. at 49, 128 S.Ct. at 596. In the second step, the court should consider the factors in 18 U.S.C. §3553(a) and determine whether a departure or a variance is appropriate. *Gall,* 552 U.S. at 49-50, 128 S.Ct. at 596-97; *United States v. Roberson,* 517 F. 3d 990, 993 (8th Cir. 2008).

The correct calculation of a sentence under the guidelines is a starting point. *Gall,* 552 U.S. at 49, 128 S.Ct. at 596. The overarching consideration under the Sentencing Reform Act is that the sentencing court "'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States,* 552 U.S. 85, 101, 128 S.Ct. 558, 570 (2007). As the United States Supreme Court recognized, "(i)t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 2053 (1996). Indeed, the district courts have an

"institutional advantage" in making sentencing decisions as "they see so many more Guidelines cases than appellate courts do." *Koon*, 518 U.S. at 98, 116 S. Ct. at 2047.

18 U.S.C. §3661 governs the use of information for sentencing. This statute provides that "(n)o limitations shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. By enacting this statute, "Congress codified the 'long standing principle that sentencing courts have broad discretion to consider various kinds of information." *Pepper v. United States,* 562 U.S. 476, 488, 131 S.Ct. 1224, 179 L.Ed.2d 166 (2011); *United States v. Watts,* 519 U.S. 148, 151, 117 S.Ct. 663, 136 L.Ed.2d 554 (1997). The United States Supreme Court has emphasized that possession of the fullest information possible concerning a defendant's life and characteristics is "highly relevant—if not essential—to the selection of an appropriate sentence." *Pepper,* 562 U.S. at 488; citing *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Pepper,* 562 U.S. at 488; citing *Wasman v. United States,* 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

The traditional discretion of sentencing courts to conduct a broad inquiry that includes largely unlimited information continued after passage of the Sentencing Reform Act of 1984 and the enactment of the United States Sentencing Guidelines scheme. *Pepper,* 562 U.S. at 488-489. Under the Supreme Court's existing sentencing framework, while the Guidelines are the starting point for sentencing and an initial benchmark, "district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in §3553(a), subject to appellate review for 'reasonableness.'" *Pepper,* 562 U.S. at 490; citing *Gall*, 552 U.S. at 49-51.

*B. The Guidelines Calculation.*

1. The enhancement for importation of methamphetamine under §2D1.1(b)(5) does not apply where the same conduct accounted for in applying the enhancement, the importation of methamphetamine, is already accounted for in determining the base offense level under §2D1.1(a)(5) and the elements an offense of conviction, the violation of 21 U.S.C. §§ 952 and 960.

Impermissible double-counting at sentencing happens when the same conduct is used to increase the defendant's sentence in two different ways. *United States v. Bryant,* 913 F.3d 783, 787 (8th Cir. 2019). As the Eighth Circuit has stated, "[i]mpermissible double counting occurs when *precisely the same aspect of a defendant's conduct* factors into his sentence in two separate

ways." *United States v. Johnson*, 860 F.3d 1133, 1146 (8th Cir. 2017) (emphasis in original) (quoting *United States v. Strong*, 826 F.3d 1109, 1116 (8th Cir. 2016)).

Impermissible double counting can occur in two different ways. First, "[d]ouble counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Hedger*, 354 F.3d 792, 793 (8th Cir. 2004) (citations and internal quotations omitted). Second, impermissible double counting may also occur when "the offense itself *necessarily* involves the same conduct as the enhancement." *United States v. Beith,* 407 F.3d 881, 889 (7th Cir. 2005) (abrogated on other grounds by *United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012); see also *United States v. Hare,* 49 F.3d 447, 452 (8th Cir. 1995) (finding that because the specific offense characteristic of U.S.S.G. §2S.2(b)(1)(B) applies to conduct that is not an element of the offense of money laundering under 18 U.S.C. § 1957, "it does not amount to impermissible double counting").

The Guidelines provide for a 2-level offense level increase in the following circumstance:

> If (A) the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were

> imported unlawfully, and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by 2 levels.

U.S.S.G. §2D1.1(b)(5). The enhancement "applies whether or not a defendant knew that the offense involved importation of methamphetamine." *United States v. Werkmeister,* 62 F.4th 465, 469 (8th Cir. 2021) petition for cert. filed (U.S. June 16, 2023) (No. 22-7806).

Based upon his guilty pleas, Mr. Nguyen has been adjudged guilty of conspiracy to distribute 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; and importation of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 952 and 960. The type of drug involved in the offense, methamphetamine, is accounted for in determining the defendant's base offense level under U.S.S.G. § 2D1.1(a)(5) and (c)(3). PSR ¶ 34. The amount of methamphetamine used to determine the defendant's base offense level includes both the methamphetamine in the vehicle he was driving when he was arrested in Minnesota on February 8, 2022, (8,482.18 grams) and the methamphetamine he admitted he brought into the United States from Mexico on March 17, 2022 (960 grams). PSR ¶¶ 9-10, 14-15, 17, 23. The type of drug involved in this drug importing, manufacturing, trafficking, or possession offense is an essential fact that is incorporated into the determination of a defendant's base offense level under

§2D1.1(a)(5) and (c). Here, the same fact, methamphetamine, accounts in part for application of the enhancement under §2D1.1(b)(5).

The other fact pertinent to the application of §2D1.1(b)(5) is "importation." The PSR determines that the enhancement applies based upon the following:

> Investigative materials and the written plea agreement indicate the defendant traveled from Mexico to the United States with methamphetamine. Page 3 of the written plea agreement explicitly indicates that on or about March 19, 2022, the defendant imported (emphasis added) a mixture and substance containing a detectable amount of methamphetamine to the United States from place outside the United States. On that date, the defendant entered the United States from Mexico in a vehicle at the California Port of Entry. As he drove through a secondary inspection area, the defendant threw approximately two pounds of methamphetamine out of the vehicle. The defendant is directly responsible for this importation, not merely peripherally aware of the methamphetamine's origins.[1]

PSR, Addendum at pp. A.1-A.2.

This conduct, the importation of the methamphetamine, is an element of the offense under 21 U.S.C. § 952 and 960. 21 U.S.C. § 952 defines the offense of importation of controlled substances in pertinent part as follows: "It shall

---

[1] Whether or not a defendant is directly responsible for the importation or merely peripherally aware of the fact that a drug was imported makes no difference in the application of §2D1.1(b)(5) under *Werkmeister,* supra. Given the significant quantities of methamphetamine manufactured outside the United States, the enhancement would seemingly apply to most every violation of 21 U.S.C. § 841(a)(1) involving methamphetamine. See "Methamphetamine Seizures Continue to Climb in the Midwest," Drug Enforcement Administration, July 10, 2019; available at https://www.dea.gov/stories/2019/2019-07/2019-07-10/methamphetamine-seizures-continue-climb-midwest (last checked September 28, 2023).

be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I…." 21 U.S.C. § 952(a). To convict the defendant of this offense requires proof that the defendant played a role in bringing the controlled substance into the United States from a foreign country. *United States v. Martinez-Mercado,* 888 F.2d 1484, 1491 (5th Cir. 1989).

Precisely the same conduct, Mr. Nguyen importing 960 grams of methamphetamine from Mexico into the United States on March 19, 2022, establishes the defendant's guilt of violating 21 U.S.C. § 952(a) and his base offense level under U.S.S.G. §2D1.1(a)(5); as well as being the basis for application of the enhancement under §2D1.1(b)(5). While the enhancement only applies to amphetamine or methamphetamine and 21 U.S.C. § 952 is not so limited, the type of drug, methamphetamine, is accounted for to determine the base offense level. Thus, because the same conduct is accounted is fully for in another part of the Guidelines and as an element of an offense of conviction, collectively; application of the enhancement of §2D1.1(b)(5) in the circumstances of this case is impermissible double counting. This enhancement therefore should not apply.

2. Nguyen has no criminal history points and the proposed two offense level reduction for certain zero-point offenders should be applied.

The proposed amendments to the United States Sentencing Guidelines at Part B, Subpart 1 of Amendment 821, create a new Chapter Four guidelines at §4C1.1 which decreases by 2-levels the offense level for defendants who did not receive any criminal history points and do not have certain aggravating factors. The new Adjustment for Certain Zero-Point Offenders provides as follows:

§4C1.1. Adjustment for Certain Zero-Point Offenders

(a) ADJUSTMENT .—If the defendant meets all of the following criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;
(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
(3) the defendant did not use violence or credible threats of violence in connection with the offense;
(4) the offense did not result in death or serious bodily injury;
(5) the instant offense of conviction is not a sex offense;
(6) the defendant did not personally cause substantial financial hardship;
(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

> (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
>
> (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;
>
> decrease the offense level determined under Chapters Two and Three by 2 levels

United States Sentencing Commission, Official Text Version of 2023 Amendments (Effective November 1, 2023) (Apr. 27, 2023); https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf.

The parties agree that Mr. Nguyen would qualify for this reduction. (Doc. No. 72 at ¶ 10). The U.S. Sentencing Commission has also voted to make application of the "Zero-Point Offender" reduction retroactive beginning February 1, 2024 should the amendment to the Guidelines become effective. https://www.ussc.gov/about/news/press-releases/august-24-2023. Defendant therefore requests that the Court vary downward from the applicable Guideline total offense level by 2-levels.

3. Summary of guidelines objections and proposed calculation.

Based upon the above objections, defendant asks that the Court adopt the following Guidelines calculation.

- Base offense level, §2D1.1(c)(3) 34

| | |
|---|---|
| • Safety valve, §5C1.2 | -2 |
| • Acceptance of responsibility, §3E1.1 | -3 |
| • Zero-Offender reduction, §4C1.1(proposed) | -2 |
| • Total offense level | 27 |

With a total offense level of 27 and a criminal history category of I, the imprisonment range under the advisory Guidelines is 70 months to 87 months.

*C. Additional sentencing considerations of 18 U.S.C. § 3553(a) warrant a downward variance from the Guidelines' range.*

*United States v. Booker,* 534 U.S. 220, 125 S. Ct. 738, 764-66, 160 L.Ed.2d 621 (2005) (Breyer, J.), mandates that sentences be "reasonable" in light of the factors enunciated in 18 U.S.C. §3553(a). *United States v. Winters*, 416 F.3d 856, 859 (8th Cir. 2005). These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for-

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; …
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

As *Booker* made the United States Sentencing Guidelines advisory, the Court has the discretion to apply the sentencing objectives and factors outlined above and impose a sentence not previously authorized under the Guidelines. *United States v. Robinson,* 409 F.3d 979, 981–82 (8thCir. 2005). In Mr. Nguyen's case, these factors warrant a downward variance to a sentence of 40 months' imprisonment. Defendant respectfully submits that any sentence of imprisonment longer than this is greater than necessary to accomplish the goals of sentencing under 18 U.S.C. § 3553(a).

1. <u>Nature and circumstances of the offense and the history and characteristics of the defendant.</u>

**i. The offense.**

The nature and circumstances of the offense are serious. Mr. Nguyen acknowledges that by participating in the distribution of methamphetamine,

he was fueling the addictions of many people and causing real harm to them and their communities. Mr. Nguyen has struggled with drug addiction himself for many years. PSR ¶ 60. Overall, it was his addiction to drugs as well as the fast money associated with drug dealing that led to his participation in the criminal conduct; certainly, transporting the methamphetamine to Minnesota on February 8, 2022.

The circumstances of his participation in the conduct of March 19, 2022 are somewhat different. While it could be argued that his transporting 960 grams of methamphetamine across the Mexico/U.S. border not long after he was released from the Nobles County jail is an aggravating circumstance; such argument overlooks the reason why he transported the drugs on that occasion. Most of the nearly 19 pounds of methamphetamine seized on February 8, 2022, were not Mr. Nguyen's drugs to lose. They were owned by Mr. Nguen's source of supply ("SOS") who demanded payment, irrespective of whether the drugs were seized or not. It was made clear to Mr. Nguyen that he had to work off the debt resulting from the seizure of the 19 pounds by delivering other drugs for the SOS. If not, the SOS threatened to kill Mr. Nguyen and his girlfriend. The circumstances of the March 19, 2022 transportation thus, while not absolving Mr. Nguyen of guilt, are mitigating.

**ii. The defendant's history and characteristics.**

Attached are letters supporting Mr. Nguyen from the following individuals:

- Theresa Nguyen, sister
- Oanh Tran, former girlfriend of 20 years
- Bao Le, cousin

These letters show that Mr. Nguyen is much more than the offense of conviction. He worked hard most of his life and did very well as an auto mechanic. He is smart, technical, kind hearted, generous, and always willing to help others. Things started going wrong for Mr. Ngueyn after the death of his father in 2019 from stomach cancer. Liem and his father were especially close and he took the loss very hard. Not long thereafter, Mr. Nguyen and Ms. Tran ended their long-term relationship.

Ms. Tran notes how Mr. Nguyen's arrest and incarceration have caused him to do a "lot of soul searching and self-reflection." The person he became while involved in drug use and distribution is not who he is. He wants more for himself and wants to do better. This is demonstrated by the transcript of the programming Mr. Nguyen has completed while detained at the Sherburne County jail. This commitment to putting his life on a different path is also confirmed by Mr. Le who writes "Liem is truly and whole heartedly a good person that made a terrible mistake. He has been reflecting

on his poor decisions as he awaits sentencing." Importantly, the letters also confirm that Mr. Nguyen has good family support which will continue after his release from prison.

2. The need for the sentence imposed.

A sentence of 40 months' imprisonment is a significant punishment. Mr. Nguyen has never been to prison before. Indeed, it does not appear he was ever incarcerated until his arrest on February 8, 2022. It will certainly promote respect for the law and deter Mr. Nguyen and others from engaging in similar conduct. A sentence longer than this is not needed to accomplish the goals of sentencing.

3. The need to avoid unwarranted sentence disparities.

A sentence of 40 months' imprisonment will not result in any sentence disparities. Judiciary Sentencing Information shows that for methamphetamine offenders who had an offense level of 27 and a criminal history category of I, for those 752 defendants who received a sentence of imprisonment, the average length of imprisonment imposed was 40 months and the median length of imprisonment imposed was 36 months. See Exhibit 1 attached hereto.

## IV. CONCLUSION

For the above reasons, Defendant respectfully requests that the Court sentence him to a term of imprisonment of 40 months. He also requests that

the Court recommend to the Bureau of Prisons that he be designated to a Federal Correctional Facility near San Diego, California and that he be allowed to participate in the Residential Drug Abuse Treatment Program.

Respectfully submitted,

DATED: October 14, 2023

GOETZ & ECKLAND P.A.

By: _*s/Frederick J. Goetz*__________

FREDERICK J. GOETZ
Attorney Registration No. 185425
Banks Building
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTONERY FOR DEFENDANT